**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 24-MJ-218 (MAU)** |
| | : | |
| **v.** | : | |
| | : | |
| **KENTRELL FLOWERS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Kentrell Flowers (hereinafter referred to as "defendant" or "FLOWERS"), be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm) and 18 U.S.C. § 3142(f)(1)(A) (crime of violence). As discussed further below, the defendant stands charged with 18 U.S.C. §111(a)(1) and (b) (Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon) and 18 U.S.C. § 2119 (Attempted Carjacking). The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**I.      Procedural History**

The defendant is charged by Complaint with Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of Title 18 U.S.C. § 111(a)(1) and (b), and Attempted Carjacking, in violation of Title 18 U.S.C. § 2119. His initial appearance occurred on July 12, 2024. At the defendant's initial appearance, the government orally moved for detention pending trial pursuant to the above-referenced provisions of the federal bail statute, and any

additional provisions that may apply upon review of the Pretrial Services Agency (PSA) report.

## II.     <u>Legal Authority and Argument</u>

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id.*; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210; *see also Williams*, 798 F. Supp. at 36.

By reason of the crimes charged, one of which is a crime of violence under federal law, there is a presumption in the Bail Reform Act that the defendant should be detained pending trial as a danger to the community. 18 U.S.C. 3142(e). This presumption is reinforced strongly by the facts of the case, as outlined *supra* and below.

Once a rebuttable presumption has been triggered, "the presumption operate[s] at *a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption" *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis in original); *see also United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (the presumption in § 3142(e) "are 'rebutted' when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if

released") (quoting *United States v. Dominguez*, 783 F. 2d 702, 707 (7th Cir. 1986)); *United States v. Rodriguez*, 950 F. 2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."), citing *United States v. Matir*, 782 F.2d 1141, 1144 (2d Cir. 1986). While the burden of production may not be heavy, *see Unites States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991), the applicable cases all speak in terms of a defendant's obligation to introduce "evidence." Moreover, even if the defense does submit such evidence, the presumption remains as a factor that may be considered by the Court, among others, in determining whether the defendant should be detained, and the presumption retains "evidentiary weight." *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (citations omitted).

As the court explained in *United States v. Ali*, 793 F. Supp. 2d 386 (D.D.C. 2011), even if the defendant offers evidence to counter the presumption, the presumption does not disappear entirely:

> At oral argument, defendant's counsel posited that the rebuttable presumption function as a "bursting bubble" that ceases to exist once a defendant produces any credible evidence. Although the D.C. Circuit has not expressly ruled on this issue, circuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence as do judges of this Court.

*Id*. at 388 n.2 (internal citations omitted), citing *United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant

must be detained pretrial."); *see also United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely but remains a factor to be considered among those weighed by the district court.'") (quoting *United States v. Mercedes*, 254 F. 3d 433, 436 (2d Cir. 2001)); *Portes*, 786 F. 2d at 764 ("[Use] of [the word rebutted] in this context is somewhat misleading because the rebutted presumption in not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in §3142(g)."), quoting *Dominguez*, 783 F. 2d at 707. Clearly, the defendants have not and cannot overcome this presumption for detention.

Specifically, "[i]n determining whether the release of a defendant would endanger the community, the court must consider any available information concerning the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; the weight of evidence against the person; various personal information including character, employment, past conduct, and so on; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

## III.   The Bail Reform Act Factors All Favor Detention Given Defendant's Risk of Flight and Danger to the Community

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and

circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1).

    A.    <u>**Nature and Circumstances of the Offense Charged**</u>

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The defendant was illegally in possession of a loaded firearm, while attempting to carjack a federal officer.

Specifically, on July 5, 2024, at approximately 1:17 AM, Deputy United States Marshal ("DUSM")-1 and DUSM-2 were on-duty, working a protective detail on the 2100 block of 11th Street, Northwest, Washington, D.C. Both DUSMs were dressed in U.S. Marshals apparel while on duty. DUSM-1 wore a U.S. Marshals Service Polo shirt while DUSM-2 wore a U.S. Marshals Service T-Shirt. The DUSMs were parked in separate vehicles about 1:15 a.m. in the 2100 block of 11th Street NW, when a silver mini-van stopped directly next to DUSM-1's vehicle while he was seated inside his unmarked U.S. government vehicle.[1] As the silver mini-van stopped, an individual, later identified as defendant Kentrell Flowers ("FLOWERS"), got out of the van, approached DUSM-1's driver's side-door, and pointed a firearm directly at DUSM-1 through the front driver's side window.

DUSM-1, while seated in his government vehicle, then pulled out his department issued firearm and fired approximately four times at FLOWERS through the driver's side window, striking FLOWERS in the mouth. *See* Figures 1 & 2 below (images of vehicle).

---

[1] As the Supreme Court recognized in *United States v. Feola*, 420 U.S. 671 (1975), "knowledge that the intended victim" of assault "is a federal officer" is not required for the offense of 18 U.S.C. § 111, because the federal officer element is "jurisdictional."



*Figure 1 – Damage to driver's side window after DUSM-1 fired at FLOWERS*



*Figure 2 – Damage to driver's side window after DUSM-1 fired at FLOWERS*

DUSM-2 also fired numerous shots at FLOWERS. Seconds later, FLOWERS fell to the

ground near the driver's side of DUSM-1's vehicle. DUSM-1 then exited his vehicle and provided first aid to FLOWERS, while the silver mini-van driven by unknown suspect S-2 fled the scene travelling northbound on 11th Street Northwest. A second unknown suspect, S-3, fled the scene on foot after getting out of the vehicle from which the defendant initially exited. The firearm FLOWERS possessed was subsequently recovered nearby. DUSM-1 picked up the firearm that FLOWERS pointed at him and placed it into his right pant leg pocket to secure the firearm. The recovered firearm, which was later processed on the scene by an MPD crime scene technician, was determined to be a .40 caliber Smith & Wesson (SN# SW40VE). It had (0) rounds in the chamber, and (8) rounds of .40 caliber ammunition in a 13-round-capacity magazine. *See* Figure-3 below.



*Figure 3 – .40 caliber Smith & Wesson and loaded magazine*

Moreover, to further treat the defendant's injuries, FLOWERS was transported to a local hospital where he was treated for injuries to his mouth and placed under arrest. While at the hospital, FLOWERS verbally identified himself, giving his name, date of birth, and address.

While investigating the attempted carjacking, an MPD detective recovered video from near the location of the scene that captured portions of the incident. The video, which is in black and white, showed that at approximately 1:17 AM, a light-colored mini-van drove Northbound on the 2100 block of 11th Street, Northwest and then stopped next to DUSM-1's car. An individual later identified as FLOWERS then got out of the van and approached DUSM-1's driver's side door. Within seconds, the light-colored van started driving Northbound on 11th Street, with the rear right passenger door opened. Simultaneously, another subject (believed to be S-3) started running northbound from the rear of the van, onto the sidewalk. The van then continued driving northbound as the subject continued running northbound on the sidewalk. The van and S-3 then went out of the view of the camera. *See* Figure 4 below.



*Figure 4 – Red arrows above points to S-2 driving away and S-3 running from the vehicle that FLOWERS initially exited prior to approaching USDM-1*

Using details from the recovered video and from the DUSM's accounts, MPD detectives queried MPD local stolen/carjacked vehicles database and discovered that a Silver Toyota Sienna mini-van, 2017 VA tag TYC9805, was previously carjacked on June 16, 2024, and as of the date of the query had not been recovered. Detectives visually compared the recovered video footage to the pictures of the vehicle on D.C.'s License Plate Reader (LPR) and confirmed that the Silver Toyota Sienna van appeared to be the same van that was used in the attempted carjacking of DUSM-1. The stolen mini-van was recovered at 11:26 a.m., hours after the July 5, 2024, attempted carjacking of DUSM-1 in the 2500 block of Burns Street, Southeast, Washington, D.C. 20020.

### B.   Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is strong. As outlined above, the defendant was arrested, his firearm was recovered at the scene, and the defendant was subsequently rushed to the hospital to receive medical care after being shot. Thus, there is no question as to the defendant's identity. Moreover, the evidence strongly supports that he was armed. Indeed, the recovered firearm was loaded with (8) rounds of .40 caliber ammunition in a 13 round capacity magazine. Accordingly, FLOWERS should be detained pending trial in this matter.

### C.   The Defendant's History and Characteristics

The third factor, the history and characteristics of the person, also weighs in favor of detention. Though the defendant has no adult convictions on his record, the sheer nature of the defendant's violent and predatory assault on a stranger and possessing a loaded firearm - with at least two other unknown suspects - demonstrates that the defendant should be detained pending trial. Simply stated, there are no conditions or combination of conditions which would ensure the safety of our community.

### D.   Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention, for the reasons outlined above. The firearm that the FLOWERS possessed had the potential to cause grievous bodily injury (or death) to members of the community, law enforcement, or to the defendant himself. Hence, the defendant's actions thus created an incredibly dangerous situation for law enforcement, the defendant, and anyone else in the area.

10

Indeed, other courts have recognized the inherent dangerousness of carrying a concealed, loaded firearm on one's person. *See United States v. Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public. *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

The defendant's possession of a loaded semiautomatic firearm loaded with 8 rounds of ammunition while attempting to carjack a federal officer's vehicle, shows plainly he is a danger to the community. This factor, as with the three prior factors, weighs in favor of the defendant being held without bond pending trial.

**IV.**     <u>**Conclusion**</u>

The government respectfully requests that the Court issue an Order granting its motion that

the defendant being held without bond pending trial.


Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:     <u>*/s/Emory V. Cole*</u>
        EMORY V. COLE
        PA. Bar No. 49136
        Assistant United States Attorney
        601 D Street, N.W.
        Washington, D.C. 20530
        Telephone: (202) 252-7692
        Emory.Cole@usdoj.gov