UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 24-mj-218 (MAU) |
| ) | |
| Kentrell Flowers ) | |

**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S REQUEST FOR PRE-TRIAL DETENTION**

Defendant Kentrell Flowers, by and through counsel, opposes the government's request for pre-trial detention, pursuant to the Bail Reform Act, 18 U.S.C. § 3142.

Mr. Flowers is only 18 years old and does not have a single prior criminal offense or contact with law enforcement. He should be released because there are compelling circumstances that weigh strongly in favor of release.

1

## Background

The government charges that on July 5, 2024, Mr. Flowers attempted to carjack an unmarked government vehicle (unbeknownst to him). *See* ECF No. 1. Mr. Flowers allegedly displayed a firearm to the driver of the vehicle that did not have a bullet in the chamber – showing his intent was not to pull that trigger. In response, the U.S. Marshal sitting in the driver side of his vehicle shot his firearm four times through the window – striking Mr. Flowers in the mouth. Thankfully, Mr. Flowers was treated and recovered at Howard Hospital where he remained for one week.

Mr. Flowers was arrested on the criminal complaint filed on July 5, 2024, and charged with a violation of 18 U.S.C. §§ 111(a)(1) and (b) in addition to Attempted Carjacking in violation of 18 U.S.C. § 2119. Mr. Flowers appeared for an initial appearance on July 12, 2024, where undersigned counsel was appointed to represent him.

Pre-trial services has screened and found eligible a suitable third party custodian that will be presented at the detention hearing currently scheduled for July 17, 2024.

## ARGUMENT

### THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST FOR PRE-TRIAL DENTION

#### A. The Applicable Legal Standard

The Bail Reform Act requires courts to release defendants who are pending trial on personal recognizance or on an unsecured appearance bond unless the

government has presented clear and convincing evidence that there are no conditions that will "reasonably assure the appearance of the person as required or . . . the safety of any other person or the community." 18 U.S.C. §§ 3142(b), 3142(f)(2)(B). In other words, "the default position of the law . . . is that a defendant should be release pending trial." *United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)).

If the case involves a felony that is *not* a crime of violence but that involves the alleged possession of a dangerous weapon, upon motion by the government, the Bail Reform Act requires the court to hold a hearing to determine whether any condition or combination of conditions will reasonably assure the defendant's appearance in court and the safety of persons and the community, 18 U.S.C. § 3142(f)(1)(E); 18 U.S.C. § 3142(f)(2)(A). When imposing a condition, or combination of conditions, the court must select the "least restrictive" conditions. 18 U.S.C. § 3142(c)(1)(B).

Defendants who are charged with certain specified offenses are subject to a rebuttable presumption that no condition, or combination of conditions, can assure the defendant's appearance or ensure the safety of the community, *see* 18 U.S.C. § 3142(e). Even if such a presumption exists, the defense only has to meet a burden of <u>production</u> and the burden of persuasion remains with the government throughout the proceeding. *United States v. Taylor*, 289 F.Supp.3d 55, 63 (D.D.C. 2018) (emphasis added) (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Here, even if the court finds this to be a presumption case, the defense clearly met

its burden of production and the government was unable to meet its burden of persuasion.

In determining whether the government has met its burden of persuasion by clear and convincing evidence proving that no combination of conditions can protect a person or the community, or by a preponderance of evidence that no combination of conditions can assure the defendant's appearance, courts consider four factors: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence; (3) the defendant's character, including his physical and mental condition, family and community ties, past conduct, drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger posed to any person by release. 18 U.S.C. § 3142(g).

The government argues this is a presumption case based on the charges being crimes of violence. However, in the Fourth Circuit's *Taylor* decision (which the Supreme Court affirmed), the court made clear that federal attempted carjacking does not qualify as a 924(c) crime of violence. *See US v. Taylor*, 979 F.3d 203, 209 (4th Cir. 2020) ("Rather, as we have repeatedly held, certain crimes of violence — like Hobbs Act robbery, federal bank robbery, and carjacking — may be committed *without* the use or attempted use of physical force because they may be committed merely by means of threats.").

In addition, assaulting a federal officer with a dangerous weapon is also not a crime of violence because the D.C. Circuit has interpreted the offense to be a "general intent" crime, which tolerates reckless conduct. *See United States v.*

*Kleinbart*, 27 F.3d 586, 592 (D.C. Cir. 1994); *see also United States v. Duran*, 884 F. Supp. 566, 567 (D.D.C. 1995) (holding that § 111 is a general intent crime). While numerous courts have previously found that § 111(b) is a crime of violence, those holdings are no longer persuasive after *Borden v. United States*, 141 S. Ct. 1817 (2021), which held that a criminal offense with a *mens rea* of recklessness cannot qualify as a "violent felony" under ACCA. Because general intent crimes usually take the form of recklessness, there is no requirement that someone intentionally use the object as a weapon to support a § 111(b) conviction. *United States v. Arrington*, 309 F.3d, 45 (D.C. Cir. 2002). Therefore, the crime can be committed without use of force.

Even if the Court finds that this case triggers a rebuttable presumption, the government still cannot meet its burden as outlined above after the defense clearly meets its slight burden of production to rebut the presumption.

### B. The Defendant's Personal History and Characteristics weigh in Favor of Release

Mr. Flowers just turned 18 years old this past February and resides with his mother and step-father in Washington, D.C. with his younger siblings. Prior to his arrest in this matter, Mr. Flowers was finishing up a few credits at the Maya Angelou Charter School in order to obtain his high school diploma. He was given more time to complete his education because he was enrolled in an Individualized Education Plan ("IEP"). According to his mother, Mr. Flowers was doing very well in school and had a great relationship with his teachers.

In addition, Mr. Flowers has never even been arrested before and this is his first contact with the criminal justice system. He does not even have a prior juvenile history.

Sadly, while Mr. Flowers was being treated for a gunshot wound, his girlfriend went into early labor with his first child, who was thankfully born healthy a couple days ago. His newborn daughter is now residing with his girlfriend. Because Mr. Flowers is detained, he has not been able to meet his daughter and missed the birth of his first child.

Based on his history and characteristics, the government was not able to prove by clear and convincing evidence that Mr. Flowers presents a "future" danger to the community. *United States v. Munchel*, 991 F. 3d 1273, 1282-84 (D.C. Cir. 2021) (in order to detain a defendant, a court must "identify an articulable threat posed by the defendant to an individual or the community").

C. <u>**The Nature and Circumstances of the Offenses Charged**</u>

While Mr. Flowers understands the serious nature of the charge, he did not have any intention to hurt anyone the night of July 5, 2024. Mr. Flowers allegedly used a firearm that was not immediately prepared to fire as it did not have a bullet in the chamber. Mr. Flowers also could not know that the car was a government vehicle, it being an unmarked Ford Expedition. Furthermore, reports do not claim that any words were exchanged between Mr. Flowers and the driver of the vehicle but rather gunshots were fired quickly in response to Mr. Flowers's presence at the driver side door with a firearm pointed.

Furthermore, while the government alleges the mini-van that dropped off Mr. Flowers was involved in a prior carjacking, there is no evidence suggesting that he himself was involved in a prior carjacking that took place on June 16, 2024, weeks before this incident in question.

Lastly, as a result of the alleged conduct, Mr. Flowers was shot in the mouth and almost died. There could not be a more shocking experience for an 18 year old. This experience will undoubtedly deter him from violating any conditions of release or repeating any alleged conduct.

### D. The Weight of the Evidence Against the Defendant

In determining whether conditions of release can ensure the safety of others, "[t]he weight of the evidence is the least important of the factors and the bail statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121-22 (9th Cir. 1991) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)); *accord United States v. Jones*, 566 F. Supp. 2d 288, 292 (D.NY 2008).

### E. Past Carjacking Cases that Resulted in Detention Were Far More Aggravating

While these types of cases typically result in pre-trial detention, this is a rare situation where the defendant has no criminal history, is young, and where the nature of the offense can be distinguished with more aggravating facts in other carjacking cases. *See United States v. Cedae Hardy*, 23-cr-296 (RJL) (held pending trial after government charged him with six separate armed carjackings, one of which where victim was allegedly shot and injured); *United States v. Eric Watson*,

7

21-cr-175 (RCL) (defendant held pending trial after allegations of kidnapping and carjacking where victim was beaten and injured – defendant had long criminal history); *United States v. Nelson et al*, 22-cr-363 (BAH) (defendants held after allegation of conspiracy to commit multiple armed carjackings).

However, the same allegations that existed in those cases where defendants were detained are not present here. Mr. Flowers is accused of a single attempted carjacking where nobody was hurt and where there was no bullet in the chamber of the firearm allegedly used. These facts in combination with his history and characteristics make this case far different than prior carjacking cases resulting in pre-trial detention.

While not in this jurisdiction and not in federal court, it is not unprecedented that individuals are released even when charged with a serious carjacking. In the *State of Maryland v. Carlos Thomas, Jr.*, Criminal Nos. CT210760X, CT2211114X, CT220175X, the defendant was released on conditions after being charged with an armed robbery of a phone store followed by a carjacking that resulted in a car crash. Mr. Thomas also had no criminal history and was young. He was successful on pre-trial release for two years and was recently sentenced to 5 years' incarceration.

## F. There are Statistics Showing that it is Extremely Rare for Defendants on Bond to Flee or Recidivate

In this case, this Court should be guided by Administrative Office of the Courts statistics showing that nearly everyone released pending trial appears in court and doesn't reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on

bond.[1]  Significantly, this near-perfect compliance rate is seen equally in federal districts with very high release rates and those with very low release rates.[2]  Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[3]  The below chart reflects this data:



Despite the statistically low risk of recidivism that defendants like Mr.

---

[1] Ex. 1, AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*,
No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[2] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019.  *See* Ex. 2, AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42.  The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15.  The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands.  *See* Ex. 2.

[3] *See* Exs. 1 and 2.

Flowers pose, the government recommends detention in 71% of cases.[4]

Mr. Flowers must be released because the government has not presented evidence that shows that he would be among the approximately 2% of defendants who commit another crime while on pretrial release.[5]

## CONCLUSION

For these reasons, Mr. Flowers respectfully requests that the Court deny the government's request to detain him pending trial and order that he be released to a suitable third party custodian with the condition that he be on home detention with the sole exception of being able to attend school for the next month to finish his high school education.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Avenue, NW
Washington, DC 20004
(202) 208-7500
Maria_Jacob@fd.org

---

[4] *See* Ex. 3, AO Table H-3 (September 30, 2021), *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_h3_0930.2021.pdf.

[5] This analysis is based on the one done in *U.S. v. Antonio Williams*, 22-cr-332 (RC), ECF No. 11.